Daniels, J.
The verdict was recovered for the amount of rent due upon a lease, executed by the plaintiffs to a special partnership, in which the defendant was the general partner. The lease extended for two years, from the 1st of May, 1878. Before it expired it was renewed and continued in force for the further period of one year, and before the expiration of that year it was again extended to the 1st of May, 1884. At the time when it expired, the rent for which the verdict was recovered was unpaid.
But the defendant resisted his liability to pay it upon the non-performance of a clause in the lease, by which it was “agreed that the said parties of the second part shall be allowed to remove the marble mantels and grates, provided the injury or damage by such removal shall be repaired and made good by them, the said parties of the second part.” They alleged by way of counter-claim that they had not been permitted- or allowed to remove the mantels, *618 either before or after the expiration of the term, and evidence was given upon the trial showing that they had been prevented by the boarding up of the corridors, or avenues, to the demised premises, from taking away and removing these mantels. The court at the trial held that the evidence did not establish the defense, and therefore directed a verdict for the plaintiffs.
In support of this ruling the objection has been taken which was not urged upon the trial, that the answer was not sufficient to present it. But in that respect the counsel is in error; for it does allege that the mantels and grates had been placed in the rooms of the building, which were occupied and used as part of the St. Nicholas Hotel, and that the plaintiffs had violated the stipulation and agreement allowing their removal from the building, and that when the defendant attempted and wished to remove the same before and immediately after the expiration of the lease, he was prevented and not allowed, and still was prevented from removing the mantels and grates from the building, and that they were worth the sum of thirteen hundred dollars. It is true that the answer is not very pointed or direct, but at the same time it contains all that was necessary for the presentation and proof of this defense.
In support of it, the evidence given by and on behalf of the defendant proved that the halls or corridors of the building were boarded up on the lower side in such a manner as to prevent access to the rooms in which these mantles had been placed, and there was no avenue to them from the street. These halls or corridors were closed before the 1st of May, 1884, and while the defendant clearly had the right to remove the mantels and grates under this clause of the lease. And it appeared from the evidence of Henry Miller, who was in the employment of the plaintiffs under their agent, James W. Jackson, that the halls were closed in this manner by his direction, but not under any direct authority derived by him for that purpose, either from the plaintiffs or their agent, James W. Jackson, He, however, was a person who was in the general employment of Jackson at work for the estate, and may, from his testimony, be considered to have been authorized to do what he did under the circumstances as they appeared to him. His testimony was: “I had the orders to go there after the building was vacated, after the first of May, and to close it up; I went there before; I found they wem taking things out of the parlor floor and tearing the building to pieces, and I set these doors up temporarily to prevent them from stealing what was on the other side of the building; I did not notify Mr. Jackson of that; I never *619 said a word about it; we boarded that up on the twenty-eighth of April; I was in the general employ of Mr. Jackson to do the work of the estate; I worked without his instructions oftentimes; he said nothing about it; I made no report at all about it.”
But these temporary doors were all removed again on the the twenty-ninth of April, and for only a short period of time, therefore, prevented ingress into the rooms by the defendant. But so far as it did so, as the work was done by a person in the employment of the plaintiffs for their benefit under their managing agent, and knowledge of the removal of the doors does not seem to have been received by the defendant, they may very well be held responsible for the obstruction mentioned by him. Mr. Jackson, the agent, himself testified that he gave no orders to anybody to go there before the first of May; that he generally employed Mr. Miller as one of the carpenters of the estate, and Mr. Demerest was another person employed by him, and he supposed that both went to the building after the first of May; that he did not send them before the first of May, nor give any instructions whatever in regard to it. But as to the time when Mr. Jackson gave directions he may very well have been mistaken, or he may have given them in such a manner as not to be clearly apprehended by the persons who received the instructions who were at work about the building.
There is certainly a fair probability or ground for agreement, that the other persons who closed up the halls did so "under the authority and employment of Mr. Jackson, and that he was mistaken in his evidence as to the time when that employment or authority took place. One of the persons who was at work closing up the halls, when interrogated upon the subject and made acquainted with the impropriety of what he was doing, stated that it was done under instructions from Mr. Lorillard’s representative, whose name he thought was Jackson; and it appeared from the evidence of Jackson that he was the agent not only for the portion of the building in which these mantels were located, but also for that adjoining it under the charge of the Lorrillard’s estate. Whether this statement was strictly admissible in evidence it is not necessary now to determine, as it was received without objection on the trial, and it was rendered applicable to the case by the testimony of Jackson himself, proving the existence of this general agency. There was fair ground for argument that this work of closing the halls was done under the authority of the agent of the plaintiffs, and that he, in view of what the men there employed were doing, was mistaken as to the time and the directions given to the persons so employed. *620 Whether this argument could be sufficiently maintained by the probabilities of the case was for the jury and not for the court to decide. They might, in consideration of the work which was being done, and of the fact that it inured to the benefit of the owners of the building, by depriving the defendant of the ability to remove the mantels, have concluded, if the question had been submitted to them, that the work, notwithstanding the statements of Jackson, was in fact done under his authority, and that the defendant had been precluded in that manner from availing himself of the advantage agreed to be secured to him by this clause in the lease. The evidence presented an appropriate case for the decision of the jury, and the judgment should be reversed and a new trial ordered, with costs to abide the event.
Brady and Bartlett, JJ., concur.